**James W. CHAMBERS, Appellant,**

v.

**Bill ARMONTROUT, Appellee.**

No. 93–1272.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1993.

Decided Feb. 8, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied March 22, 1994.

Counsel who presented argument on behalf of the appellant was Thomas R. Schlesinger of St. Louis, MO.

Counsel who presented argument on behalf of the appellee was Stephen Hawke of Jefferson City, MO.

Before McMILLIAN, WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

James W. Chambers appeals from a final order entered in the District Court[1] denying his motion for post-judgment relief under Fed.R.Civ.P. 60(b)(4), (6). *United States v. Chambers,* No. 88–567C(8) (E.D.Mo. Dec. 24, 1992) (order). For reversal, Chambers argues the district court erred in denying him post-judgment relief because the district court's August 30, 1991, order granting the state additional time to retry him (1) improperly modified the mandate of this court and thus is void and (2) violated his rights to due process under the fifth and fourteenth amendments of the Constitution. For the reasons discussed below, we affirm the order of the district court.

The following statement of facts is taken largely from this court's en banc opinion, *Chambers v. Armontrout,* 907 F.2d 825 (8th Cir.) (banc), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990).

In December 1982 Chambers was tried for the capital murder of Jerry Lee Oestricker in the Circuit Court of Jefferson County, Missouri. Two eyewitnesses gave conflicting versions of the events surrounding the moment when Chambers shot and killed Oestricker outside a bar. According to Fred Ieppert, the government's eyewitness, Chambers and Oestricker had argued inside the bar and decided to take their argument outside. Ieppert testified that he observed Oestricker standing outside the bar with his hands in the air, Chambers pointed a pistol at Oestricker and fired a single shot into his chest, Chambers hit Oestricker several times with the pistol, and Chambers shouted at Oestricker and into the bar and then ran away. The other eyewitness, James Jones, had left the bar several minutes before the shooting but was sitting in his car in the parking lot because the engine had flooded. Jones testified that he observed the smaller man (Chambers) leave the bar first, walk into the parking lot and then face the bar; the bigger man (Oestricker) left the bar a moment later; the two men argued; Oestricker moved toward Chambers and hit him in the face, knocking him to the ground; Chambers stood up and shot Oestricker, who was standing six feet away; Oestricker fell back against the wall; Chambers hit Oestricker several times with the gun, knocking him to the ground; Chambers shouted at Oestricker and into the bar; and Chambers then ran to a nearby car and the car drove off.

Defense counsel requested a self-defense instruction, but the state trial court refused to give one. The jury found Chambers guilty of capital murder, and the state trial court sentenced him to death. The Missouri Supreme Court reversed the conviction, holding that there was sufficient evidence to justify a

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri. The Honorable William L. Hungate, now retired United States District Judge for the Eastern District of Missouri, entered the prior orders in this matter.

self-defense instruction. *State v. Chambers,* 671 S.W.2d 781 (Mo.1984) (banc).

In May 1985 the state retried Chambers. At the second trial Chambers's new defense counsel did not interview Jones or call Jones to testify on behalf of Chambers, and the state did not call Jones as a witness. Ieppert did testify. Defense counsel requested a self-defense instruction; the state trial court refused to instruct the jury on self-defense and denied defense counsel the right to argue self-defense in closing argument. The second trial also resulted in a conviction for capital murder. At sentencing defense counsel did not present any mitigating evidence or argue for leniency. Chambers was again sentenced to death.

With the assistance of different counsel, Chambers appealed to the state supreme court. The state supreme court affirmed the conviction and death sentence. *State v. Chambers,* 714 S.W.2d 527 (Mo.1986) (banc).

In November 1986 Chambers filed a motion for post-conviction relief pursuant to Mo. Sup.Ct.R. 27.26, asserting ineffective assistance of counsel at the second trial. Several witnesses, including Jones, testified at the motion hearing. Jones's testimony about the fight was similar to his testimony at the first trial; Jones also testified that no one from the public defender's office had contacted him since the first trial. The attorney who had represented Chambers at the second trial also testified at the motion hearing. The attorney testified that he had read Jones's testimony from the first trial, but that neither he nor anyone else from the public defender's office had contacted or interviewed Jones because Jones's testimony was considered too damaging. The state trial court denied the motion for post-conviction relief, and the state appellate court affirmed. *Chambers v. State,* 745 S.W.2d 718 (Mo.Ct.App.1987). The application for transfer to the state supreme court was denied.

Chambers then filed a petition for a writ of habeas corpus, alleging that he had been denied effective assistance of counsel at the second trial because defense counsel failed to interview or call Jones as a witness at the second trial. The district court denied the petition, finding that defense counsel's failure to interview or call Jones as a witness at the second trial was reasonable because his testimony was potentially too damaging, because Jones was not a credible witness and because Chambers had signed a pretrial statement in which he agreed with defense counsel's decision not to call Jones as a witness. Chambers appealed, and a panel of this court reversed the decision of the district court. *Chambers v. Armontrout,* 885 F.2d 1318 (8th Cir.1989). We later granted the suggestion for rehearing en banc and vacated the panel decision. After rehearing en banc, we reaffirmed the panel decision, reversed the decision of the district court denying habeas relief, and remanded the case to the district court with directions to enter an order that the state either retry Chambers within 120 days or free him from custody and inform this court and the district court of its intention within 45 days. *Chambers v. Armontrout,* 907 F.2d at 833 (holding defense counsel acted unreasonably and prejudicially in failing to call the only witness whose testimony was crucial to theory of self-defense, which was only theory of defense available).

On November 9, 1990, the district court entered the order as directed. On December 26, 1990, the state informed the district court that it had decided to retry Chambers and that Chambers had been transferred from the state prison to a local jail as a pretrial detainee. On July 22, 1991, Chambers filed a "motion for entry of writ of habeas corpus and for release from custody" on the ground that, some 259 days after the en banc decision and several months after the expiration of 120–day period, he had not yet been retried and had not not been released from custody. In response, the state argued the motion was moot because Chambers was no longer in the custody of the state department of corrections as a convicted prisoner and attributed any delay in retrial to the defense.

On August 30, 1991, the district court ordered the state to either retry Chambers before October 1, 1991, or release him from custody on that date. Chambers did not appeal this order. The state then filed motions to dismiss and to modify the order and attached as an exhibit a copy of a defense motion for continuance that had been filed in

the state trial court. On September 23, 1991, the district court ordered the state to retry Chambers on or before November 5, 1991; Chambers did not appeal this order either. On November 5, 1991, the state informed the district court that Chambers's third trial had begun on October 29, 1991, the jury had found him guilty of capital murder on October 31, 1991, and Chambers had been sentenced to death. The state also suggested, quite incorrectly, that the conviction on retrial "empirically" demonstrated that the decision of the court of appeals to grant habeas relief was erroneous. Chambers has appealed that conviction to the state supreme court, *State v. Chambers*, No. 74525, and that appeal has been suspended pending litigation of Chambers's Mo.Sup.Ct.R. 29.15 motion for post-conviction relief.

On January 31, 1992, the district court dismissed Chambers's motion for entry of writ of habeas corpus and for release from custody because Chambers had been retried within the extended time limits. The district court noted that Chambers had not appealed the order granting additional time for retrial (and had failed to oppose the state's motion to dismiss). Chambers did not appeal.

In December 1992 Chambers filed a Rule 60(b) motion for post-judgment relief. Chambers argued that the August 30, 1991, order was void and violated due process because the district court did not have the authority to modify this court's mandate by granting the state additional time to retry him. The district court denied Rule 60(b) relief. This appeal followed.

For reversal, Chambers argues the district court lacked the authority to modify the mandate of this court by granting the state additional time to retry him. For this reason, Chambers argues the August 30, 1991, order is void and violates due process. The state argues, as a preliminary matter, that the only order on appeal is the December 24, 1992, order denying Rule 60(b) relief, and not the underlying August 30, 1991, and September 23, 1991, orders granting the state additional time to retry Chambers, or the January 31, 1992, order dismissing Chambers's habeas petition. On the merits the state argues that the August 30, 1991, order is not

void because the district court had the authority to reexamine the time limits set forth in this court's mandate and the district court order on remand. The state also argues that, in any event, Chambers was not entitled to Rule 60(b) relief because it had complied with this court's mandate by releasing Chambers from custody as a convicted prisoner within the 120–day period. The state thus acknowledges that Chambers was in custody after the expiration of the 120–day period, but argues that he was lawfully in custody as a result of his immediate re-arrest on the original murder charge and subsequent detention in a local jail pending his retrial and not as a result of the constitutionally infirm conviction.

Fed.R.Civ.P. 60(b)(4) authorizes the district court to grant relief from void judgments; relief from void judgments is not discretionary. *See* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2862, at 197 (1973) (hereinafter Wright & Miller). We hold the district court did not err in denying Rule 60(b)(4) relief because the order of the district court granting the state additional time to retry Chambers is not void. The district court did not lack jurisdiction of the subject matter or over the parties or act in a manner inconsistent with due process of law. *Id.* at 198–200. In our view, Chambers's argument is not so much that the district court lacked the jurisdiction to grant the state additional time to retry him as it is that the district court erred in not following this court's mandate. However, "[a] judgment is not void merely because it is erroneous." *Id.* at 198 (footnote omitted). "On remand, a district court is bound to obey strictly an appellate mandate. If the district court fails to comply with an appellate mandate, the appellate court has authority to review the district court's actions and order it to comply with the original mandate." *Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 456 (8th Cir.1990) (citations omitted). Chambers could have appealed the district court's August 30 order granting the state additional time to retry him and argued that the extension of time was inconsistent

with this court's mandate, but he did not do so.[2]

 Chambers also sought post-judgment relief under Fed.R.Civ.P. 60(b)(6). Rule 60(b)(6) authorizes the district court to grant relief from judgments "for any other reason justifying relief." We review the district court's decision to deny Rule 60(b)(6) relief for abuse of discretion. We hold the district court did not abuse its discretion in denying Rule 60(b)(6) relief. As noted above, Chambers could have appealed from the district court's August 30 order granting the state additional time to retry him, but he did not do so. Absent extraordinary circumstances, Rule 60(b)(6) motions cannot be used to remedy a failure to take an appeal. *See, e.g., Klapprott v. United States,* 335 U.S. 601, 614, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949); *see generally* 11 Wright & Miller § 2864, at 214–15. No extraordinary circumstances prevented Chambers from appealing the district court's August 30 order (or, for that matter, the September 23, 1991, order granting additional time or the January 31, 1992, order dismissing the habeas petition). Unlike the petitioner in *Klapprott v. United States,* Chambers had not been incapacitated by illness and was represented by counsel.

2. In any event, we do not think the district court erred in granting the state additional time to retry Chambers. Not only was there evidence that Chambers had already been transferred from prison to a local jail pending retrial, but there was also some evidence that the delay in retrial had been attributable at least in part to the defense. *Cf. In re Progressive Farmers Ass'n,* 829 F.2d 651, 655 (8th Cir.1987) (law of the case doctrine generally requires that decision on former appeal be followed in any subsequent proceedings unless evidence subsequently introduced is substantially different or the decision is clearly erroneous and works manifest injustice), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988).

The present case is similar to *Moore v. Zant,* 972 F.2d 318 (11th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 1650, 123 L.Ed.2d 271 (1993). In that case, the court of appeals had set aside the petitioner's death sentence due to the lack of an adequate jury instruction. On remand, the district court ordered a new sentencing phase trial within 180 days "failing which upon motion a writ of habeas corpus discharging [the petitioner] from custody shall issue." *Id.* at 319, *citing* 682 F.Supp. 549, 552 (M.D.Ga.1988). After completion of appellate proceedings, nothing happened until the state

Accordingly, the order of the district court is affirmed.

sought to resentence the petitioner in November 1990, more than 20 months after the Supreme Court denied certiorari in March 1989. The petitioner filed a motion in January 1991 to enforce the March 1988 order. The state argued that the delay had been caused by confusion in the state attorney general's office and moved the district court to set a new period for resentencing. The district court granted the state's motion and the court of appeals affirmed. The court of appeals did not read the district court's order to limit the state's resentencing powers to a certain period; rather, the court of appeals read the order to say that unless the state resentenced the petitioner within 180 days, the state would have to treat the petitioner "not as someone in its custody pursuant to a death sentence, but as an unsentenced person." 972 F.2d at 320. The court of appeals explained that the 180-day period was intended as a period of delay to the give the state time, before changing the petitioner's custodial status, to correct its constitutional error involving the original death sentence, and that the district court properly reexamined its March 1988 order to see if it was still equitable to enforce the order or whether it should give the state more time. *Id.* at 320–21.