**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSHUA HARVEST,
      *Petitioner-Appellant,*

v.

ROY CASTRO, Warden, HDSP,
      *Respondent-Appellee.*

No. 05-16879

D.C. No.
CV 00-20498 JW

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
September 27, 2007—San Francisco, California

Filed March 27, 2008
Amended July 9, 2008

Before: John R. Gibson,* A. Wallace Tashima, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima

*The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## COUNSEL

Scott A. Sugarman, Sugarman & Cannon, San Francisco, California, for the petitioner-appellant.

Jeremy E. Friedlander, Deputy Attorney General, State of California, San Francisco, California, for the respondent-appellee.

## ORDER

Respondent-appellee's petition for panel rehearing is granted and the opinion filed March 27, 2008, slip op. 3121, and reported at 520 F.3d 1055, is withdrawn and superseded by an amended opinion, filed concurrently with this order.

The petition for rehearing en banc is denied as moot. Subsequent petitions for panel rehearing and for rehearing en banc may be filed with respect to the amended opinion.

## OPINION

TASHIMA, Circuit Judge:

We must decide whether and, if so, under what circumstances, a district court has the authority to modify a conditional writ of habeas corpus after the time provided in the order has lapsed. We hold that the district court does have such authority, but that such modifications may only be made pursuant to the Rules of Civil Procedure. In this case, the State has failed to demonstrate that relief under Rule 60 is warranted; therefore, we reverse the district court, concluding that it abused its discretion when it modified the conditional writ. We remand with instructions for the district court to grant the unconditional writ of habeas corpus ordering the petitioner's release.

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 2254, and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

## BACKGROUND

Joshua Harvest was convicted of first-degree murder in California Superior Court. After exhausting his state remedies, Harvest challenged his conviction in a federal habeas action on the ground, among others, that the trial court had violated his right of confrontation under the Sixth and Fourteenth Amendments by improperly admitting Harvest's accomplice's hearsay testimony. We granted relief on that ground and remanded the case, directing "the district court to order the state to release the petitioner unless the state either modifies the conviction to one for second degree murder or retries the petitioner." *Harvest v. Castro*, 121 F. App'x 216, 220 (9th Cir. 2005). Consistent with our mandate, the district court issued a conditional writ ordering the State to release Harvest "within sixty (60) days of the date of this Order unless within that period of time the state initiates proceedings to either modify the conviction to one for second degree murder or to retry Petitioner."

The State did not initiate proceeding to modify the conviction, nor did it release Harvest within sixty days from the date of the district court's order. The State's lawyer admits that he failed to act within the designated time. He explained:

> The Court's order was received by the California Attorney General . . . on March 25, 2005, [two days after the district court issued the conditional writ]. Through counsel's error, the order was simply filed and not transmitted to the District Attorney of Contra Costa County, where petitioner was tried. The error was discovered on July 22, when the District Attor-

> ney's office inquired of the Attorney General's office about the status of the case.
>
> The error in this matter occurred for a very simple reason. After advising the District Attorney of the Ninth Circuit's modification of its opinion (in which modification the Ninth Circuit authorized the state to retry petitioner for murder or modify his conviction to second degree murder), counsel for respondent foolishly assumed that it was unnecessary for him to advise the District Attorney of the District Court's order giving effect to the Ninth Circuit's judgment. Counsel's error was professionally inexcusable . . . .

After discovering his error, the State's counsel nevertheless waited three more days before bringing the error to the district court's attention, providing the Contra Costa County District Attorney time to file a new complaint in Superior Court recharging Harvest with the murder.[1]

The State eventually filed an "Application to Amend Order Nunc Pro Tunc," seeking to amend the conditional writ. The application sought an additional sixty days to retry Harvest, modify his conviction, or release him. Harvest opposed the application, arguing that the district court should order his immediate release. Finding the State's counsel's error "excusable," the district court granted in part the State's application to amend the conditional writ — it gave the State an additional month to "release petitioner or initiate proceedings to either modify the conviction to one for second degree murder or to retry petitioner." Harvest timely appealed.

---

[1]The State's delay also provided time for the superior court to issue a no-bail warrant for Harvest's arrest.

## STANDARD OF REVIEW

We review *de novo* the question of which legal standard applies to the State's motion to modify the conditional writ, *see Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999), but review for abuse of discretion the district court's granting of relief under Rule 60(b), *see id.*

## ANALYSIS

### I.   Modifying the Conditional Writ

**[1]** When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights. *See* 28 U.S.C. § 2254(a); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody[.]"). Given that function of the writ, courts originally confined habeas relief to orders requiring the petitioner's unconditional release from custody. *See, e.g.*, *In re Frederich*, 149 U.S. 70, 77 (1893) ("[I]f such conviction was obtained in disregard or in violation of rights secured to him by the constitution and laws of the United States, . . . he may apply for a writ of habeas corpus to be discharged from custody under such conviction."); *Medley, Petitioner*, 134 U.S. 160, 173 (1890) ("[U]nder the writ of *habeas corpus* we cannot do anything else than discharge the prisoner from the wrongful confinement in the penitentiary[.]"); William Blackstone, 3 *Commentaries* *131 ("[T]he great and efficacious writ in all manner of illegal confinement, is that of *habeas corpus* . . . directed to the person detaining another, and commanding him to produce the body of the prisoner . . . and, if the cause of imprisonment were palpably illegal, they might have discharged him.").

**[2]** In modern practice, however, courts employ a conditional order of release in appropriate circumstances, which

orders the State to release the petitioner unless the State takes some remedial action, such as to retry (or resentence) the petitioner. *See, e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 89 (2005) (Kennedy, J., dissenting) (describing the "common practice of granting a conditional writ," that is, "ordering that a State release the prisoner or else correct the constitutional error through a new hearing"); *Herrera v. Collins*, 506 U.S. 390, 403 (1993) ("The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner, or in a capital case a similar conditional order vacating the death sentence."); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("[T]his Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."); *In re Bonner*, 151 U.S. 242, 259-60 (1894) (recognizing for the first time that the habeas court had the power to retain the petitioner in conditional custody before granting relief).

**[3]** Such "[c]onditional orders are essentially accommodations accorded to the state," *Phifer v. Warden*, 53 F.3d 859, 864-65 (7th Cir. 1995), in that conditional writs "enable habeas courts to give States time to replace an invalid judgment with a valid one[,]" *Wilkinson*, 544 U.S. at 87 (Scalia, J., concurring). The consequence when the State fails to replace an invalid judgment with a valid one is "always release." *Id.*; *accord Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006) (affirming district court's granting of immediate release upon the State's failure to comply with the conditional writ); *Phifer*, 53 F.3d at 862 ("If the state complies with [the district court's] order, the petitioner will not be released; if the state fails to comply with its order, release will occur."); *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985) ("A conditional grant of a writ of habeas corpus requires the petitioner's release from custody if new proceedings are not commenced by the state within the prescribed time period."); 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus*

*Practice and Procedure* § 33.3, at 1684 (5th ed. 2005) ("If the state fails to act within the time set for retrial (or for some other proceeding) to occur, the petitioner must be released from custody immediately.").

Despite the absolute language employed by some jurists and commentators, several of our sister circuits have nevertheless held that a district court can modify its conditional order even after the expiration of the time period set in the order, thus allowing the State to retain the petitioner in its custody even when the State failed to act within the prescribed time period. Those circuits hold that when the State fails to replace an invalid judgment with a valid one, the consequence for failing to do so need not always be release.

The most expansive view of this power has been expressed by the Third and Seventh Circuits. In *Gilmore v. Bertrand*, 301 F.3d 581 (7th Cir. 2002) (per curiam), the Seventh Circuit held that the district court has the power to grant the State's motion for an extension to comply with the conditional order even if the State fails to act in a timely manner. *Id.* at 583. In that case, after failing to act within the 120 days given in the conditional order, the State moved for a 45-day extension of the stay, and the district court granted it. *Id.* at 582. The Seventh Circuit reasoned that:

> [H]abeas corpus is an equitable remedy, and courts have broad discretion in conditioning a judgment granting habeas relief. Indeed, federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court. Logically, the equitable power of the district court in deciding a habeas corpus petition includes the ability to grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency.

*Id.* at 582-83 (internal citations and quotation marks omitted). Thus, *Gilmore* seems to suggest that a district court's power to modify the condition is boundless, or at least constrained only by the limits placed on the discretion of the court to craft the initial conditional order.

The Third Circuit expressly agreed with *Gilmore* that the district court has the power to modify a conditional writ, but it did so without defining the power in such expansive terms. *See Gibbs v. Franks*, 500 F.3d 202, 208-09 (3d Cir. 2007), *cert. denied* No. 07-7905, 2008 WL 423765 (U.S. Feb. 19, 2008). In *Gibbs*, the district court allowed the Commonwealth to retain custody of the petitioner even though it failed to retry him within the 120 days provided for in the conditional writ, based in part on the district court's finding that the delay was caused by both the Commonwealth and the petitioner. *Id.* In light of these circumstances, the Third Circuit failed "to see why a post-deadline justification offered by the state for the delay in a prisoner's retrial should be categorically rejected as a legal matter" and concluded that "[t]he broad discretion inherent in a district court's habeas powers include [*sic*] the ability to evaluate whether the Commonwealth has provided a legitimate reason for its delay in retrying a defendant subject to a conditional habeas writ." *Id.* at 208. The *Gibbs* court held that the district court's power to modify the conditional order includes the power to modify the writ when the district court's "actions are reasonable under the circumstances," *id.* at 207, and that one circumstance in which modification is reasonable is when the Commonwealth (or State) "provide[s] a legitimate reason for its delay[,]" *id.* at 208. To the *Gibbs* court, "it is of no moment whether the Commonwealth seeks an extension directly from the District Court during the initial deadline or . . . provides a post hoc justification for the trial delay." *Id.* Whether the district court has the power to modify the writ when the State provides no reason, or an illegitimate one, remains an open question under *Gibbs*.

The Eighth Circuit also has concluded that the district court's power to modify a lapsed conditional writ includes the power to modify the writ when the State provides a good reason. In *Chambers v. Armontrout*, 16 F.3d 257 (8th Cir. 1994), the Eighth Circuit did "not think the district court erred in granting the state additional time to retry" the petitioner, in part because "there was . . . some evidence that the delay in retrial had been attributable at least in part to the defense." *Id.* at 261 n.2.[2]

[4] We agree with our sister circuits that a district court can modify its conditional writ even after the time provided in the conditional writ has lapsed. Given that "habeas corpus is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), and that courts have "broad discretion in conditioning a judgment granting habeas relief," *Hilton*, 481 U.S. at 775, we agree with the Seventh Circuit that "[l]ogically, the equitable power of the district court in deciding a habeas petition includes the ability to grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency."[3] *Gilmore*, 301 F.3d at 582-83; *cf.*

---

[2]Additionally, the Eleventh Circuit, in a per curiam opinion, concluded that the district court had the power to give the State additional time to resentence the petitioner to death even though the district court "ordered that 'petitioner within 180 days after this order becomes final by failure to appeal or by mandate of the circuit court of appeals shall be afforded a new sentencing phase trial, failing which upon motion a writ of habeas corpus discharging him from custody shall issue.' " *Moore v. Zant*, 972 F.2d 318, 319 (11th Cir. 1992) (per curiam) (citation omitted). In that case, the State argued that the "delay in resentencing had been caused by confusion on the part of the state Attorney General's office." *Id. Moore*, however, is not particularly helpful because the *Moore* court did not read the district court order as a discharge order; instead, it "read [the order] as saying that, unless [petitioner] were resentenced within 180 days, [petitioner] would have to be treated by [the State] not as someone in its custody pursuant to a death sentence, but as an unsentenced person." *Id.* at 320.

[3]Of course the district court also had the authority to deny the extension. For example, in *Satterlee*, the district court issued a conditional writ and

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1030 (9th Cir. 1985) ("The district court has continuing jurisdiction over such matters as the modification of injunctive relief."). However, "the fact that the writ has been called an 'equitable' remedy does not authorize a court to ignore . . . statutes, rules, and precedents. . . . Rather, courts of equity must be governed by rules and precedents no less than the courts of law." *Lonchnar v. Thomas*, 517 U.S. 314, 323 (1995). Habeas proceedings brought by state prisoners are governed by a discrete set of rules. *See* Rules Governing Section 2254 Cases in the United States District Courts (codified after 28 U.S.C. § 2254) ("Habeas Rules"); *Mayle v. Felix*, 545 U.S. 644, 654 (2005). The final Habeas Rule, Rule 11, provides that the "Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or [the habeas] rules, may be applied to a proceeding under these rules." Habeas Rule 11; *see also* Fed. R. Civ. P. 81(a)(4) (providing that the Rules of Civil Procedure apply in habeas cases to the extent that those rules do not conflict with the Habeas Rules or other statutory provisions); *Mayle*, 545 U.S. at 654-55 (discussing the application of the civil rules to a habeas proceeding).

**[5]** Civil Rule 60 governs relief from judgments or orders. *See* Fed R. Civ. P. 60. Specifically, "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence."[4] *Gonzalez v.*

───────────────

when the State failed to act within the allotted time, the district court ordered the petitioner's immediate release. 453 F.3d at 368-69. The State challenged the district court's order and the Sixth Circuit affirmed, reasoning that "[w]hen the state fails to cure the error, i.e., when it fails to comply with the order's conditions, a conditional grant of habeas corpus *requires* the petitioner's release from custody." *Id.* at 369 (emphasis in original).

[4]Rule 60(b) provides:

*Crosby*, 545 U.S. 524, 528 (2005). As the Supreme Court has stated, "Rule 60(b) has an unquestionably valid role to play in habeas cases." *Id.* at 534. In *Gonzalez*, the Supreme Court held that a habeas petitioner may move for relief from denial of habeas under Rule 60(b) so long as the motion is not the equivalent of a successive petition.[5] *Id.* at 535-36. In doing so, the Court noted that "[i]n some instances . . . it is the State, not the habeas petitioner, that seeks to use Rule 60(b), to reopen a habeas judgment *granting* the writ."[6] *Id.* at 534

---

Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

   (1)   mistake, inadvertence, surprise, or excusable neglect;

   (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

   (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

   (4)   the judgment is void;

   (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

   (6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

[5]If the motion seeking relief from the judgment is, in reality, a successive petition, the motion would be "inconsistent with" the Anti-Terrorism and Effective Death Penalty Act. *Gonzalez*, 545 U.S. at 531. Like the other Civil Rules, Rule 60 applies only "to the extent that [it is] not inconsistent with any statutory provisions or [the habeas] rules[.]" Habeas Rule 11.

[6]The Supreme Court has also explicitly held that Rule 52(b) and Rule 59 apply in habeas corpus proceedings. *Browder v. Director*, 434 U.S. 257, 270-71 (1978). The State, therefore, could have brought a Rule 52(b) or 59 motion to modify the conditional writ as well. The deadlines under

(emphasis in the original) (citing *Ritter v. Smith*, 811 F.2d 1398, 1400 (11th Cir. 1987)).

**[6]** Moreover, Rule 60, before the 2007 Amendments, specifically provided that "the procedure for obtaining relief from a judgment shall be by motion as prescribed in [the Civil] rules or by an independent action." Fed. R. Civ. P. 60(b). Although the 2007 Amendments deleted that provision "as unnecessary," the 2007 advisory committee notes make clear that "[r]elief [from the judgment] continues to be available only as provided in the Civil Rules or by independent action." Fed. R. Civ. P. 60 advisory committee notes on 2007 amendments; *see also* 12 James Wm. Moore, *Moore's Federal Practice* § 60.40 (3d ed. 2006) ("[A]part from a motion under Rule 60(b), and independent action in equity, statutory procedures, and the court's inherent power to set aside judgments for fraud on the court, there are no other recognized means, outside of a timely appeal, for relief from a final judgment or order.").[7] Therefore, we hold that the district court has the authority to modify a conditional writ in order to give the State more time to cure the constitutional deficiency, but that such modifications are governed by the Habeas Rules and, by incorporation, the Rules of Civil Procedure, including Rule 60.

---

Rule 52(b) and 59, however, are strict. *See Carter v. United States*, 973 F.2d 1479, 1488 (9th Cir. 1992) ("The district court has no discretion to consider a late Rule 59(e) motion."). Thus, once the State failed to move to amend the judgment within 10 days, a Rule 52(b) or 59 motion was no longer available.

[7]The advisory committee notes make plain that "[t]he language of Rule 60 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Fed. R. Civ. P. 60 advisory committee notes on 2007 amendments.

## II. Applying Civil Rule 60 to Harvest's Conditional Writ

Even though the State's motion to the district court was labeled as an "Application to Amend Order Nunc Pro Tunc," we treat it as a Rule 60(b) motion. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001) ("a motion for reconsideration . . . is treated as a Rule 60(b) motion" if it is filed more than ten days after entry of judgment); *see also* 12 Moore, *supra*, § 60.64 ("Nomenclature is not important. The label or description that a party puts on its motion does not control whether the party should be granted or denied relief.").

**[7]** On appeal, the State argues that Rule 60(b)(1)'s excusable neglect standard provides sufficient grounds for the district court to reopen the conditional writ. Rule 60(b)(1), however, grants the power to "correct judgments . . . which have issued due to inadvertence or mistake." *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958)). *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2858, at 276 (2d ed. 1995) (noting that Rule 60(b) empowers courts "to relieve the oppressed from the burden of judgments unfairly, fraudulently or mistakenly entered") (internal citation and quotations marks omitted). As the advisory committee notes state, the rule is designed to provide relief "where the judgment is taken against the party through . . . mistake, inadvertence, etc." Fed. R. Civ. P. 60 advisory committee notes to the 1946 amendment. The State, however does not argue that the conditional writ was issued due to a mistake or excusable neglect; rather, the contention is that the State deserves relief from the judgment due to its failure timely to carry out the terms of the conditional writ. The State's mistake, a "mistake" that came after the issuance of the order, did not result in the issuance of the order.

**[8]** Whether Rule 60(b)(1) applies to this circumstance is therefore questionable. Yet, as the State, in its petition for rehearing, points out, had it not itself brought its noncompli-

ance to the attention of the court and made a motion to modify the original order, but rather waited until it was discovered by the court and a unconditional writ was issued, it could have made a Rule 60(b)(1) motion. In other words, under that scenario, the unconditional writ would have been issued due to the State's inadvertence, and as such, Rule 60(b)(1) would apply. We acknowledge that it seems odd that Rule 60(b)(1) applies when a party compounds its negligence by failing to bring its error to the attention of the court, but does not apply when the party brings the same error to the court at an earlier point in time. Given that anomaly, we do not decide the bounds of Rule 60(b)(1)as applied to a failure to comply with a district court order because of neglect because we can decide the case by assuming, without deciding, that Rule 60(b)(1) does apply. Instead, considering whether the State's neglect was excusable under Rule 60(b)(1), we conclude that the neglect was not excusable.

"[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Invs. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 392 (1993). Nonetheless, we have held that there may be some circumstances in which simple inadvertence could be excusable neglect. *See Pincay v. Andrews*, 389 F.3d 853, 858-59 (9th Cir. 2004) (en banc). To determine whether the inadvertence can be excusable, we apply the Pioneer factors: (1) the danger of prejudice to the nonmoving party; (2) the length of delay; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the moving party's conduct was in good faith. *Id.* at 855 (citing *Pioneer*, 507 U.S. at 395).

**[9]** In *Pincay*, there was no prejudice to the other party and the delay in question was less than 30 days. *See id.* at 859. Here, there was an actual possibility of prejudice to Harvest's interests. Had there been no delay, Harvest might have been resentenced to concurrent, rather than consecutive sentences, in which case he would immediately have been eligible for

parole. The State contends that the state court would likely have imposed consecutive rather than concurrent sentences on resentencing, but the state court was not required to do so. *See* Cal. Penal Code § 669 (noting that judge may impose concurrent or consecutive sentences); Cal. R. Ct. 4.425(a) (listing factors a court may consider in imposing consecutive sentences). There is at least a possibility that the court would not have imposed consecutive sentences, and that Harvest would have been paroled. Certainly, staying in prison when one might have been released constitutes prejudice.

**[10]** Also, here, the delay was substantial. The State did not recognize its error and contact the district court until 64 days after the court's deadline.

**[11]** As for the third factor, the State offers no reason for the delay. Importantly, the attorney in *Pincay* had made some effort to maintain an effective system for calendaring deadlines—albeit a system that broke down in that case. *See Pincay*, 389 F.3d at 860-61 (Berzon, J., concurring) (concluding that "the complete misfiring of a generally well-conceived calendaring system is" distinguishable from "letting court orders pile up on desks"). Here, the State has not suggested that it had any system for ensuring that a district court order granting a conditional writ of habeas corpus was communicated to local prosecutors. Indeed, the State's attorney provided no reason at all for the error: he admitted that the "system" consisted of himself, that he made "foolish" assumptions, and that his failure to inform the district attorney was "professionally inexcusable." In other words, the neglect here was systemic (as evidenced by the fact that it happened more than once, *see Currie v. Rupf*, No. C-02-2343 VRW (N. D. Cal. 2006)), and the State failed to provide any reason for the neglect, *see Pincay*, 389 F.3d at 862 (Kozinski, J. dissenting) ("[D]efendants need not have offered a terribly good countervailing reason to make their neglect excusable. But they needed to show *something*." (emphasis in original)).

Moreover, also unlike the movant in *Pincay*, the State here may well have operated partially in bad faith. After discovering that it had failed to comply with the conditional writ, the State's counsel waited an additional three days before bringing the error to the district court's attention, a delay which provided the Contra Costa County District Attorney time to file a new complaint in Superior Court recharging Harvest with the murder.

**[12]** Finally, we cannot ignore that the delay in this case, unlike that in *Pincay*, may have affected an individual's right to personal liberty. *Cf. Pincay*, 389 F.3d at 859 ("*Pioneer* itself instructs courts to determine the issue of excusable neglect within the context of the particular case[.]"). It is not too much to ask that, when a federal court holds that an individual has been tried, convicted, and imprisoned in a manner inconsistent with the Constitution of the United States, the State devise some system for assuring that the court's decision is complied with in a timely manner. If it fails to do so, it must identify some factor that would render its actions "excusable." It has not done so here.

Moreover, because "Rule 60(b)(1) guides the balance between the overriding judicial goal of deciding cases correctly, on the basis of their legal and factual merits, with the interest of both litigants and the courts in the finality of judgments," *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001), "[n]early all of the cases in which relief has been granted [under the excusable neglect standard] involve situations in which a party was prevented from [obtaining an adjudication on the merits]," *see* John J. Cound et al., *Civil Procedure* 1109-10 (8th ed. 2001), such as a default judgment, *see e.g.*, *TCI Group Life Ins. Plan*, 244 F.3d at 697-701, dismissal for failure to prosecute, *see, e.g.*, *Torres v. S.S. Pierce Co.*, 471 F.2d 473, 474 (9th Cir. 1972) (per curiam), or summary judgment based on failure timely to respond to a summary judgment motion, *see, e.g.*, *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224-25 (9th Cir. 2000). In

this case, the district court issued the conditional writ after the merits of Harvest's habeas petition had been extensively litigated.

We next examine whether Rule 60(b)(5), which "codifies the long-established principle of equity practice that a court may, in its discretion, take cognizance of changed circumstances and relieve a party from a continuing decree," *Gilmore v. California*, 220 F.3d 987, 1007 (9th Cir. 2000), provides the proper vehicle through which the conditional writ may have been modified in this case. To be sure, Rule 60(b)(5) applies only to those judgments that have prospective application. "The standard used in determining whether a judgment has prospective application is whether it is executory or involves the supervision of changing conduct or conditions." *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995) (internal quotation marks and citations omitted). A conditional writ of habeas corpus quite clearly "involves the supervision of changing conduct or conditions." As the Seventh Circuit described it:

> A conditional order's framework contemplates that a district court will eventually make an assessment concerning compliance with its mandate. In many cases, whether or not the state has complied will be apparent—where, for instance, a court orders a new hearing and the state completely fails to provide one. In these cases, a specific assessment concerning compliance may be unnecessary—the writ will simply issue because it is apparent that the state has not fulfilled the mandate. In other cases, however, the district court will need to examine the content of the state's action to determine whether compliance was sufficient.

*Phifer*, 53 F.3d at 865. Indeed, in this case, the conditional writ itself clearly contemplated continued supervision in that it ordered the State to "file and serve a notice of compliance

with this Order no later than sixty (60) days from the date of this Order." Therefore, we treat the State's motion to modify the conditional writ as a Rule 60(b)(5) motion.

[13] Under Rule 60(b)(5), modification of the conditional writ is warranted if there is "a significant change either in factual conditions or in law." *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992); *see also Gilmore*, 220 F.3d at 1007. The party seeking the modification has the burden of demonstrating that such a change has occurred. *Rufo*, 502 U.S. at 384. Therefore, when the State proves that there has been an intervening change in the law, *see, e.g.*, *Ritter*, 811 F.2d at 1403 (setting aside conditional writ in light of "extraordinary" circumstance of an intervening Supreme Court decision which made clear that the petitioner was not entitled to the habeas relief he had been granted);[8] *cf. Rufo*,

---

[8] *Ritter*, cited favorably by the Supreme Court in *Gonzalez*, is instructive here. In *Ritter*, the State filed a Rule 60(b) motion more than 10 days after the district court issued the conditional writ, but before the 180 days the district court had allowed for resentencing had elapsed. 811 F.2d at 1400, *cited approvingly by Gonzales*, 545 U.S. at 534. In that case, the Eleventh Circuit had issued a mandate instructing the district court to issue the writ of habeas corpus because Alabama's capital statute was facially unconstitutional. *Id.* Pursuant to this mandate, the district court entered a conditional order giving Alabama 180 days to resentence the petitioner. *Id.* After the conditional writ had been issued by the district court, the Supreme Court granted certiorari in a case involving the question whether Alabama's capital statute was facially unconstitutional. *Id.* In response to the granting of certiorari, the State moved for an extension of the time within which Alabama could resentence the petitioner. *Id.* The Supreme Court eventually held that the statute was constitutional. *Ritter*, 811 F.2d at 1400 ; *see also Baldwin v. Alabama*, 472 U.S. 372 (1985). In response to *Baldwin*, the State filed a motion, pursuant to Rule 60(b)(6), to set aside the order conditionally granting the writ, which the district court granted. *Ritter*, 811 F.2d at 1400. The petitioner appealed and the Eleventh Circuit affirmed the district court's order setting aside the conditional writ, reasoning that the Supreme Court decision was an extraordinary circumstance, but noting "that a change in the law will not *always* provide the truly extraordinary circumstances necessary to reopen a case." *Id.* at 1401 (emphasis in the original).

502 U.S. at 388 ("[M]odification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent."), or demonstrates that the petitioner's actions have inhibited the efforts of the State to retry or resentence the petitioner, *see, e.g.,Gibbs*, 500 F.3d at 208 (granting the Commonwealth's motion to modify the conditional writ when the Commonwealth demonstrated that the petitioner was at least partially at fault for the delay); *Chambers*, 16 F.3d at 261 n.2 (same), modification of the writ may be appropriate. In this case, however, the State has demonstrated no "significant change[s] either in factual conditions or in law." *See Rufo*, 502 U.S. at 384. Therefore, modification pursuant to Rule 60(b)(5) was unwarranted.

**[14]** Civil Rule 60(b)(6), the so-called catch-all provision, which provides that on motion "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any other reason [in addition to those categories specified in Rules 60(b)(1)-(5)] that justified relief," Fed R. Civ. P. 60(b)(6), also does not provide an avenue for modification of the conditional writ. A party moving for relief under Rule 60(b)(6) "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the action in a proper fashion." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006) (internal quotation marks and alteration omitted). We have cautioned that this Rule is to be "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Id.* (quoting *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005)). Even assuming that the State can show that it has suffered an injury, it has not demonstrated that there were any "circumstances beyond its control." Indeed, the State's counsel acknowledges that the circumstances were under his control and that his error was "professionally inexcusable."

**[15]** We therefore conclude that the State has failed to demonstrate that relief was warranted under Rule 60; thus, that the district court abused its discretion when it modified the conditional writ.

## CONCLUSION

We hold that when the State fails to cure the constitutional error, *i.e.*, when it fails to comply with the order's conditions, and it has not demonstrated that it deserves relief from the judgment under Rule 60 or the other mechanisms provided for in the Rules, the conditional grant of habeas corpus *requires* the petitioner's release from custody. Because the State has failed to demonstrate that relief under Rule 60 was warranted, we reverse the order of the district court and direct it to issue an unconditional writ of habeas corpus releasing Harvest from custody.[9]

**REVERSED AND REMANDED.**

---

[9]Our granting of an unconditional writ of habeas corpus does not, itself, preclude the State from rearresting and retrying Harvest. *See Gardner v. Pitchess*, 731 F.2d at 640 (9th Cir. 1984) (reversing order that barred rearrest and retrial); 2 Hertz & Liebman, *supra*, § 33.3, at 1686 ("[F]ederal courts usually permit rearrest and retrial after the time period specified in the conditional release order has elapsed and the prisoner has been released.").