**Joshua HARVEST, Petitioner—Appellant,**

v.

**Roy A. CASTRO, Warden, Respondent—Appellee.**

No. 03–16149.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 2004.

Decided Jan. 28, 2005.

**11.** *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, 2005 WL 50108 (2005) (Nos.04–104, 04–105).

Scott A. Sugarman, Esq., Sugarman & Cannon, San Francisco, CA, for Petitioner–Appellant.

Jeremy Friedlander, Office of the California Attorney General, San Francisco, CA, for Respondent–Appellee.

Before OAKES,* KLEINFELD, and CALLAHAN, Circuit Judges.

## MEMORANDUM **

We affirm in part and reverse in part the district court's denial of Harvest's petition for habeas corpus.

### I. Confession

▬ The state court's determination that the trial court properly admitted Harvest's confession as to the murder of Vigil was not contrary to, nor an unreasonable application of, clearly established Supreme Court law.[1] A federal court may not issue a writ of habeas corpus unless it determines that the state court applied federal law in an unreasonable way, not just that the state court applied federal law erroneously or incorrectly.[2] In the present case, we cannot say that the state court was unreasonable in concluding that Harvest did not invoke his right to remain silent as to the Vigil murder. Nor was the state court's decision unreasonable in finding that the earlier *Miranda* violation did not

taint Harvest's later confession as "fruit of the poisonous tree."[3]

It was not unreasonable for the state court to find that Harvest only expressed his reluctance to "snitch" on his co-accomplices and talk about the details of killing the homeless man, rather than invoking his right to silence. This finding had an adequate evidentiary basis in the transcripts of Harvest's video confession. Harvest began by describing the circumstances of Vigil's murder:

A: And then they like shoved [Vigil] back there, to the back of the truck and tried to pick him up.

Q: Uh-huh.

A: And then they left. And then I went down there and hopped in the truck.

Q: Who were "they"?

A: That's all I know. I don't want to say that, though.

Later in the conversation, the detective again tried to find out who Harvest's accomplices were:

Q: Was Chuckie there? Come on, let's be straight. Who was there?

A: I'm not going to say because I don't want people to start saying—

Q: Okay. Let me, let me put it to you this way.

A: —that I'm a snitch.

After giving the detective more details about his involvement in the crime, such as the type of weapon he used in the attack,

---

* The Honorable James L. Oakes, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. 28 U.S.C. § 2254(d)(1).

2. *Williams (Terry) v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

3. *See Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

Harvest again expressed reluctance to implicate his accomplices:

Q: *You all* threw [the chisels] through the window. What window?

A: Back window.

Q: Back window, okay.

A: I don't want to say anything *(unintelligible).*

Q: Why don't you want to say *that?*

A: *Because I don't want to get nobody in trouble for it.*[4]

At oral argument, Harvest's counsel stressed Harvest's statement, "I don't want to say anything." This was not Harvest's complete statement. Something unintelligible followed those words. The "because" implies that Harvest was yet again expressing his unwillingness to implicate his accomplices. Therefore, the state court's decision that Harvest did not invoke his right to silence as to the Vigil murder was not contrary to, nor an unreasonable application of, clearly established Supreme Court law.[5] We would be hard pressed to say that the state court's decision was *erroneous,* let alone *unreasonable.*[6]

## II. Jury Instruction

Although we find the use of California Jury Instruction Criminal 2.15 in this circumstance to have been improper,[7] we do not think the state court was unreasonable in determining that another jury instruction on felony-murder helped to cure the infirm instruction. The jury was further instructed that "a felony incidental to a murder is not felony murder" with the following instruction:

> This rule does not apply, however, when one had an independent purpose for the commission of the robbery, and it is not simply incidental to the intended murder. A defendant who kills another human being while simultaneously intending to rob and to commit murder is guilty of first degree felony murder.

Furthermore, giving Jury Instruction 2.15 was not prejudicial because it is unlikely that the jury relied solely on Harvest's possession of the truck and slight corroborating evidence to find him guilty of felony murder. There was a wealth of other evidence that the jury had available to it—particularly Harvest's own confession. We cannot say that Jury Instruction 2.15 "had [a] substantial and injurious effect or influence in determining the jury's verdict."[8]

## III. Accomplice Statements

■ The state trial court's decision affirming the use of Harvest's accomplice's hearsay statements was contrary to, and an unreasonable application of, clearly established Supreme Court precedent.[9] We therefore reverse the district court's denial of habeas relief on this issue.

At the time of the state court's decision, the proper test for determining whether admission of hearsay was a violation of the Confrontation Clause was set out in *Ohio v. Roberts.*[10] Under *Roberts,* a hearsay

---

4. Emphasis added.

5. *See* 28 U.S.C. § 2254(d)(1).

6. *See Williams (Terry),* 529 U.S. at 41, 120 S.Ct. 14951.

7. *See Ulster Co. Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

8. *See Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quotation omitted).

9. 28 U.S.C. § 2254(d)(1).

10. *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Roberts* has been overruled by *Crawford v. Washington* in so far as testimonial statements are involved.

statement can be admitted only "if it bears adequate indicia of reliability." [11] To satisfy this test, (1) reliability can be inferred where the evidence "falls within a firmly rooted hearsay exception," or (2) the evidence bears "particularized guarantees of trustworthiness." [12] The state court's decision was both contrary to, and an unreasonable application of, *Roberts*.

First, California Evidence Code § 356 is a codification of the common law rule of completeness, not a "firmly rooted hearsay exception." Second, Pittman's out-of-court statements to Sergeant Ward lack "particularized guarantees of trustworthiness." As the Supreme Court recognized, an accomplice like Pittman has a strong motivation to "implicate the defendant and to exonerate himself," thus an accomplice's statements "about what the defendant said or did are less credible than ordinary hearsay evidence." [13]

The state court's decision is not a reasonable application of *Tennessee v. Street*, because there the jury was admonished not to consider the unsworn, uncross-examined statement for its truth. [14] But here the jury was not so admonished, even in the face of the prosecutor's argument that it should be used for the truth of what Pittman said:

> So Pittman's statements to Sergeant Ward are half the truth. True Meyers and Pittman threw their chisels. Pittman's chisel bounced off the victim. The Defendant tells us that; Myers tells us that. That's the truth. Harvest opened the door and stabbed the victim.

> That's the truth. Harvest did all the stabbing. That's the truth.

We cannot conclude that this error was harmless. The question for the jury was which of these thugs stabbed Vigil. Two blamed the third after they got caught. The prostitute testified that at some time—but not, as the state conceded, when Pittman was beating Vigil—Pittman was at the back of the truck. The blood on Harvest's shoes and his palm print on the truck did not prove much about who stabbed Vigil since it was undisputed that Harvest, Pittman, and Myers were all present when Vigil was beaten and stabbed to death. Nothing physical showed which of the thugs stabbed Vigil. While Myers also testified that Harvest pulled Vigil out of the truck and stabbed him, the jury was instructed to treat an accomplice's testimony with distrust and that it was "subject to the rule requiring corroboration." Pittman's accusation provided corroboration and it may have mattered to the jury that both of the other thugs blamed Harvest.

Defense counsel did not open the door. All defense counsel asked Sergeant Ward was whether Pittman told him, as Harvest had, that Vigil had been "doing heroin and being with a hooker in his neighborhood." Defense counsel carefully avoided asking who Pittman claimed had done the stabbing or anything close to that. The prosecutor's opening question on redirect, "Mr. Pittman told you that the Defendant did all the stabbing, didn't he," cannot fairly

---

See *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, *Roberts* was the applicable established Supreme Court law at the time the state courts were considering Harvest's claims, and there has been no contention that *Crawford* is not a "new rule" under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**11.** *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.

**12.** *Id.*

**13.** *Lee v. Illinois*, 476 U.S. 530, 451, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

**14.** *Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).

be characterized as correcting any misleading implication of the cross.

AFFIRMED IN PART, REVERSED IN PART.

CALLAHAN, Circuit Judge, concurring in part and dissenting in part.

CALLAHAN, Circuit Judge.

I concur in the majority's disposition, with the exception of Part III, to which I dissent. I cannot agree with that portion of the disposition that grants Harvest's habeas petition. The majority found that the state courts unreasonably applied clearly established federal law in determining that Harvest's Sixth Amendment rights were not violated by the admission of hearsay statements by Pittman, his co-defendant. Even assuming that the trial court erred in admitting Pittman's statements, the evidence independently linking Harvest to Vigil's murder was overwhelming. *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir.2004) ("The overwhelming majority of trial errors are non-structural and do not trigger habeas relief unless the error resulted in substantial and injurious effect or influence in determining the jury's verdict, or unless the judge is in grave doubt about the harmlessness of the error.") Harvest confessed to stabbing Vigil at least once. Myers, one of Harvest's co-defendants, testified that Harvest led the attack on Vigil by running up to the pickup truck so that by the time that Myers arrived, Harvest had pulled open the door and was stabbing Vigil, who was sitting in the driver's seat.[1] Officers investigating the murder found a partial palm print belonging to Harvest in the interior of the driver's door and found a pair of shoes that Harvest admitted owning that had human blood over many areas. Furthermore, Ms. Nguyen, an eyewitness, identified Pittman in court and testified that he was behind the truck at some distance while two other attackers were by the driver's door when she fled the scene. Harvest repeatedly stated that Myers, his other co-defendant, could not have stabbed Vigil. As the record contained considerable independent evidence linking Harvest to Vigil's murder, any error by the trial court in admitting Pittman's statements was harmless. *See United States v. Bernard S.*, 795 F.2d 749, 756 (9th Cir.1986). I therefore respectfully dissent from this portion of the disposition and would deny the petition.

---

1. Although the majority states that there was a jury instruction noting that Myers was an accomplice and that his testimony required corroboration, there was evidence in the record, including Ms. Nguyen's statement that Pittman was not near the driver's seat when the attack commenced, corroborating Myers' account that Harvest led the attack.