**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| REUBEN KENNETH LUJAN, *Petitioner-Appellee – Cross-Appellant*, <br><br> v. <br><br> SILVIA GARCIA, Warden *Respondent-Appellant – Cross-Appellee.* | Nos. 10-55637 10-55685 <br><br> D.C. No. 2:04-cv-01127-MMM-RCF <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
July 11, 2013—Pasadena, California

Filed October 29, 2013

Before: A. Wallace Tashima and Jay S. Bybee, Circuit
Judges, and Cathy Ann Bencivengo, District Judge.[*]

Opinion by Judge Bencivengo

---

[*] The Honorable Cathy Ann Bencivengo, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed in part and vacated in part the district court's conditional grant of a 28 U.S.C. § 2254 habeas corpus petition based on a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

Petitioner confessed to two murders in a custodial interview during which he was not advised of his right to counsel before and during questioning. The panel held that petitioner's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were violated, because the words used by law enforcement during the custodial interview did not reasonably convey to petitioner that he had the right to speak with an attorney present at all times—before and during his custodial interrogations.

Petitioner also confessed during his trial testimony. The panel held that the state court decision upholding the conviction, based on harmless error, violated *Harrison v. United States*, 392 U.S. 219 (1968), which in turn held that when a defendant's trial testimony is induced by the erroneous admission of a confession into evidence, the trial testimony cannot be introduced in a subsequent prosecution, nor can it be used to support the initial conviction on harmless error review, because that would perpetuate the underlying constitutional error in the procurement of the confession.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel vacated the portion of the district court's order and judgment concluding that second-degree murder convictions are an appropriate remedy (based on the evidence after exclusion of the confessions), and remanded with instructions that the district court may offer the option that the state court make an independent determination as to whether the convictions can be modified under state law.

The panel declined to address petitioner's contention that the confession was involuntary, because this inquiry was neither appropriate nor necessary in light of the grant of habeas relief.

---

## COUNSEL

Keith H. Borjon (argued), Supervising Deputy Attorney General, Kamala D. Harris, Attorney General of California, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Xiomara Costello, Deputy Attorney General, Los Angeles, California, for Respondent-Appellant/Cross-Appellee.

Tracy J. Dressner (argued), La Crescenta, California, for Petitioner-Appellee/Cross-Appellant.

---

## OPINION

BENCIVENGO, District Judge:

A California state court jury convicted Petitioner Reuben Kenneth Lujan of two counts of first-degree murder with special findings of using a deadly weapon, lying in wait, and

conviction for multiple murders. Evidence supporting the convictions included Mr. Lujan's out-of-court custodial confession and his in-court testimonial confession at trial. The California Court of Appeal found that the custodial confession was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). However, the Court of Appeal also found that derivative evidence rules did not apply to exclude Mr. Lujan's testimonial confession. In light of the admissibility of Mr. Lujan's testimonial confession, the Court of Appeal concluded that the admission of the custodial confession constituted harmless error and affirmed the convictions. The Court of Appeal was not presented with, nor did it consider, the United States Supreme Court's opinion in *Harrison v. United States*, 392 U.S. 219 (1968).

Pursuant to 28 U.S.C. § 2254, Mr. Lujan petitioned for federal habeas corpus relief from the convictions. The district court conditionally granted the petition, finding that the California Court of Appeal's harmless error determination conflicted with the clearly established Supreme Court precedent of *Harrison*. The district court issued a conditional writ directing Respondent Silvia Garcia, the former warden of Calipatria State Prison, to release Petitioner, unless the state timely initiates proceedings to either modify Petitioner's convictions to convictions for second-degree murder or retry Petitioner. Respondent filed a timely notice of appeal, and Mr. Lujan timely cross-appealed. For the reasons explained below, we affirm in part and vacate and remand in part the judgment granting the writ of habeas.

## BACKGROUND

Monica Lujan, Petitioner's estranged wife, and Gilbert Madrigal, an off-duty deputy sheriff, were murdered in the

early hours of August 16, 1998. Petitioner was arrested later that morning. Petitioner and Monica had separated four months earlier and on July 13, 1998, Monica told Petitioner she wanted a divorce. Petitioner habitually stalked and threatened Monica after their separation. He told her if she "wanted to play," she "would not win." He told her that their marriage would not be over until he said it was, and if he could not have her, "we would have to wait and see."

When Monica threatened to get a restraining order, Petitioner responded, "Go ahead. That is, if you're still alive." Monica reported to the police that Petitioner had simulated shooting her – pantomiming a gun with his fingers and saying, "This is going to be you." She also reported that he had told her, "I'll kill you if you try to leave me." As a result of Monica's reports and Petitioner's repeated unannounced visits to her residence, Petitioner was arrested for making terrorist threats and stalking. One week before the killings, at approximately two o'clock in the morning, Petitioner again returned to Monica's residence and chased her inside.

Late on August 15, 1998, Petitioner drove by Monica's residence and saw her and Mr. Madrigal become "intimate" and enter his nearby house. Petitioner knew Mr. Madrigal was a police officer and had repeatedly questioned his (Petitioner's) son to determine if Monica was dating Mr. Madrigal or other men. While Monica and Mr. Madrigal were inside, Petitioner hid behind a truck in the driveway. When he heard them exit, he picked up a concrete block weighing fifteen pounds. He struck Mr. Madrigal with the block and then struck Monica repeatedly. Monica died at the scene; Mr. Madrigal died after spending a week in a coma. Petitioner later tossed the concrete block into the bushes and

returned to his mother's home where he was residing. When Monica's father called the house to say Petitioner hurt Monica and "she did not make it," Petitioner told his mother to "go see how she is." Around the same time, Petitioner told his brother he had gotten into a fight with Monica and hurt her.

Once in custody, one of the detectives, without his printed *Miranda* warning card, advised Petitioner at 7:35 a.m. on August 16, 1998 as follows:

> Your rights are you have the right to remain silent. Whatever we talk about, and you say, can be used in a court of law, against you. And if you don't have money to hire an attorney, one's appointed to represent you free of charge. So those are your rights.

> If you have questions about the case, if you want to tell us about what happened tonight, we'll take your statement – take your statement from beginning to end. We'll give you an opportunity to explain your side of the story. And that's – that's what we're looking for. We're looking for the truth. So do you understand all that?

The first interview terminated at 9:05 a.m. A second audiotaped interview commenced some time later, and ended at 10:36 a.m.

Petitioner confessed to the murders during his third police interrogation, which commenced at 5:40 p.m. that evening.

Prior to his confession, Petitioner had the following exchange with the detective:

> [Petitioner]: Can I have an attorney present?
>
> [Detective]: You want, you want an attorney present? You feel you need one?
>
> [Petitioner]: Yes I do.
>
> [Detective]: Okay. All right. If that's what you want to do, we'll do that.
>
> [Petitioner]: Can I get one in here today?
>
> [Detective]: I really doubt it. I mean, I'm going to be honest with you. It's Sunday evening. When you go to court in a couple of days there will be one appointed for you. That's the way the system is set up. If you have funds and you want to call and hire your own attorney. If you want to call and hire an attorney, that's fine. . . . If you want to make a statement without an attorney, that's up to you. I doubt that if you hire an attorney they'll let you make a statement, they usually don't. That's the way it goes. So, that's your prerogative, that's your choice. Now, if you do want to talk to me without an attorney, that's your choice. You can just tell the jailor, "Hey, I'd like to talk to the detectives without an attorney present." Okay? That's your choice.

Petitioner would later make a custodial confession, admitting that he committed a brutal, surprise attack upon both victims with the concrete block.

Petitioner was tried for the murders in the Los Angeles Superior Court.[1] During a pretrial proceeding, Petitioner moved to suppress his custodial confession. The trial court allowed Petitioner's confession in the government's case-in-chief, despite finding the *Miranda* warning "incomplete." The trial judge further determined the confession was voluntary.

At trial, Petitioner testified to "explain the details of the offenses and the circumstances of his confession." Petitioner's trial counsel averred that Petitioner would not have testified but for the trial court denying his motion to suppress his custodial confession. Petitioner was convicted of two counts of first-degree murder with special findings of using a deadly weapon, lying in wait, and conviction for multiple murders.

The California Court of Appeal, on direct appeal, and the district court, on federal habeas review, separately found that Petitioner's custodial confession was obtained in violation of *Miranda* because he was not advised of his right to counsel before and during questioning. The California Court of Appeal found that while Petitioner's custodial confession should have been excluded at trial, its admission constituted harmless error because his trial testimony confirmed the same inculpatory facts. As it deemed the error to be harmless, the California Court of Appeal affirmed the convictions.

---

[1] This was his second trial; a previous jury found Petitioner guilty of one count of stalking but hung on the two murder counts.

In reaching its decision, the Court of Appeal stated, "Defendant does not argue his confession was involuntary." The Court of Appeal also stated that there "is no contention nor evidence the August 16, 1998, Norwalk Sheriff's Station confession was involuntary; it merely resulted from a *Miranda* violation." The Court of Appeal also denied Mr. Lujan's petition for state habeas corpus relief. Both Mr. Lujan's direct and state habeas corpus appeals to the Supreme Court of California were summarily denied.

On federal habeas review in the district court, Magistrate Judge Rita C. Federman issued a thorough Final Report and Recommendation that recommended that the district court issue a conditional writ of habeas corpus ordering Respondent to release Petitioner or grant him a retrial. The magistrate judge agreed with the California Court of Appeal that the *Miranda* warning was defective, but concluded that the Court of Appeal's consideration of Petitioner's trial testimony in its harmless error analysis was contrary to clearly established federal law – the United States Supreme Court's holding in *Harrison*. The magistrate judge explained *Harrison* to stand for the principle that "when a defendant's trial testimony is induced by the erroneous admission of a confession into evidence, the trial testimony can not [*sic*] be introduced in a subsequent prosecution, nor can it be used to support the initial conviction on harmless error review, because to do so would perpetuate the underlying constitutional error in the procurement of the confession."

The magistrate judge also noted that the record did not support the Court of Appeal's conclusion that Petitioner had failed to raise the voluntariness of his confession. The magistrate judge pointed to evidence in Petitioner's direct appeal, his habeas appeal, and his petition for review to the

Supreme Court of California – all of which raised the issue – and noted that the parties litigated the issue during pretrial evidentiary hearings, as well. Nonetheless, the magistrate judge stated that the involuntariness question "does not appear to provide an alternate basis for federal habeas relief under § 2254(d)."

District Judge Morrow concurred and issued a thorough opinion adopting the magistrate judge's findings. The district court, however, supplemented the habeas remedy to allow Respondent to initiate proceedings to modify the convictions to convictions for second-degree murder, in lieu of release or retrial. While the district court agreed that the first-degree murder convictions and special circumstance findings did not result from harmless error, it found that the remaining evidence, after exclusion of Petitioner's custodial and testimonial confessions, was sufficient to establish convictions for second-degree murder.

## STANDARD OF REVIEW

We review de novo a district court's decision to grant or deny habeas relief. *Benn v. Lambert*, 283 F.3d 1040, 1051 (9th Cir. 2002). Since Petitioner filed his habeas petition in 2004, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003). We may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1), (2).

We must review the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Sarausad*

*v. Porter*, 479 F.3d 671, 677 (9th Cir. 2007), *vacated in part on denial of reh'g en banc*, 503 F.3d 822 (9th cir. 2007) and *rev'd and remanded on other grounds sub nom. Waddington v. Sarausad*, 555 U.S. 179 (2009). We presume the state court's factual findings to be correct – "a presumption the petitioner has the burden of rebutting by clear and convincing evidence." *Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010). Even in the presence of error, the Court can only grant federal habeas relief if "the error had a 'substantial or injurious effect' on the verdict." *Parle v. Runnels*, 387 F.3d 1030, 1034 (9th Cir. 2004) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

We review de novo a district court's rulings on questions of law. *Crittenden*, 624 F.3d at 950. Factual findings and credibility determinations made by a district court in the context of granting or denying the petition are reviewed for clear error. *Id.* at 964. However, mixed questions of law and fact, including a district court's application of AEDPA, as well as its conclusion that the standards set forth in AEDPA are satisfied, are also reviewed de novo. *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004).

Finally, we review a district court's ruling on the appropriate remedy in a habeas petition for abuse of discretion. *Chioino v. Kernan*, 581 F.3d 1182, 1184 (9th Cir. 2009).

## DISCUSSION

### I. *Harrison v. United States*, 392 U.S. 219 (1968), Sets Forth Clearly Established Federal Law

#### A. *Harrison*

Eddie Harrison was arrested on his eighteenth birthday for a theft that occurred one day earlier. *Harrison v. United States* ("*Harrison I*"), 359 F.2d 214, 219 (D.C. Cir. 1965) (en banc). A few days later, police officers questioned Harrison regarding a robbery and murder that occurred the week before the aforementioned theft. The interrogation took place while Harrison was in jail awaiting grand jury proceedings on the theft charge. *Id.* at 219–20. Harrison made an oral statement confessing to his and his co-conspirators' plan to rob the victim and to holding the shotgun involved. *Id.* at 220. Several hours later, the officers recorded Harrison's confessions in writing. *Id.* at 222. The admission into evidence of Harrison's oral and written confessions led to his conviction at trial.

A panel of the United States Court of Appeals for the District of Columbia Circuit reviewed the admission by the district court of Harrison's confessions and reversed the conviction. It held that Harrison's written confession should have been excluded under the rule of *Mallory v. United States*, 354 U.S. 449 (1957), which required the exclusion of confessions elicited during prolonged interrogation in violation of the prompt arraignment requirement of Rule 5(a) of the Federal Rules of Criminal Procedure. *Id.* at 220–22. *See also Mallory*, 354 U.S. at 455–56. It also held that Harrison's oral statement was inadmissible under *Killough v. United States*, 336 F.2d 929 (D.C. Cir. 1964). *Killough* held

that a confession made to a jail classification officer was not admissible because the questioning was intended to serve limited classification purposes and the prisoner was told that any statements he made would not be used against him. *Id.* at 931–32.

In its ruling, the panel declined to apply *Harling v. United States*, 295 F.2d 161 (D.C. Cir. 1961) (en banc), in which the D.C. Circuit held that admissions by a minor in juvenile proceedings must be excluded in later adult criminal proceedings. *Id.* at 163–64. It noted that regardless of Harrison's age, he was not incarcerated in connection with a juvenile proceeding. *Harrison I*, 359 F.2d at 221.

The D.C. Circuit ordered rehearing en banc on the issue of the admissibility of Harrison's oral confession. *Harrison I*, 359 F.2d at 223–29. Upon rehearing, the D.C. Circuit extended *Harling* to require exclusion of any confession made by a prisoner while within the exclusive jurisdiction of the juvenile court. *Id.* The circuit court found that Harrison had been within the exclusive jurisdiction of the juvenile court from the moment he committed his crime until the juvenile court waived jurisdiction. *Id.* at 227. As a result, the D.C. Circuit remanded for a new trial. *Id.* at 229.

Because it could no longer rely on Harrison's out-of-court confessions, the government introduced portions of Harrison's testimony from the earlier trial during its case-in-chief. *Harrison v. United States* ("*Harrison II*"), 387 F.2d 203, 208 (D.C. Cir. 1967), *rev'd on other grounds*, 392 U.S. 219 (1968). The D.C. Circuit held that reading Harrison's prior trial testimony into the record did not violate his rights. In particular, it concluded that the "fruit of the poisonous tree" doctrine was not applicable because the relationship

between the erroneous admission of the jailhouse confessions and Harrison's subsequent trial testimony was so attenuated as to dissipate any taint. *Id.* at 209–10.

The Supreme Court reversed. It held that "the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby – the fruit of the poisonous tree, to invoke a time-worn metaphor." *Harrison*, 392 U.S. at 222. The Supreme Court relied on the general rule concerning the fruit of the poisonous tree doctrine articulated in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920). It stated that the "'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.'" *Harrison*, 392 U.S. at 222 (quoting *Silverthorne*, 251 U.S. at 392). The Court held that if Harrison had testified "in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." *Id.* at 223. The Court placed the burden on the government to show that its illegal action did not induce Harrison's testimony, and found the government had not met that burden. *Id.* at 225.

## B. *Harrison* Applies to the States

In evaluating the validity of Mr. Lujan's convictions, the California Court of Appeal conducted a harmful error analysis that considered Mr. Lujan's trial testimony as independent evidence of his guilt. In reviewing Mr. Lujan's federal habeas petition, the district court concluded that this analysis resulted in a decision that was contrary to the clearly

established federal law of *Harrison*. Respondent appeals this determination.**²**

Respondent argues that, because the Supreme Court's decision in *Harrison* does not interpret any provision of federal law applicable to the States, *Harrison* is not clearly established federal law entitling Petitioner to federal habeas relief. *See* 28 U.S.C. § 2254(d)(1). In *Harrison*, the confessions were illegally procured according to rules applicable only to federal prosecutions.**³** For this reason, Respondent argues that "*Harrison* was of non-constitutional dimension applicable only to federal prosecutions."

*Harrison* is not strictly a case holding that, under its unique set of facts, the use of the defendant's trial testimony was unconstitutional. Rather, as evidenced by the Supreme Court's own characterization of the case, *Harrison* is a Fifth Amendment case:

> If the prosecution has actually violated the defendant's Fifth Amendment rights by introducing an inadmissible confession at

---

**²** The district court further applied the harmless error standard announced in *Brecht* and concluded that the error was not harmless "[b]ased on its substantial impact on the prosecution's presentation of the facts, on the proof of material elements of the charges, on the defense strategy, and on the selection of the jury instructions given by the trial court, it is clear the trial court's error in admitting the confession had a substantial and injurious effect on the jury's verdict." Respondent does not appeal this determination. We therefore accept the district court's *Brecht* determination.

**³** We note, however, that whether or not the confessions were illegally procured was not an issue in dispute before the Supreme Court in *Harrison*.

trial, compelling the defendant to testify in
rebuttal, the rule announced in *Harrison v.
United States*[,] 392 U.S. 219[](1968),
precludes use of that testimony on retrial.

*Oregon v. Elstad*, 470 U.S. 298, 316–17 (1985).    The
Supreme Court could not have been any plainer.

*Harrison* is clearly established federal law under
§ 2254(d)(1) because, as the district court explained in its
well-reasoned opinion, *Harrison* looked to constitutional
principles and case law to structure an exclusionary rule that
would safeguard the Fifth Amendment privilege against
compulsory self-incrimination.  The *Harrison* exclusionary
rule applies to the case at bar because Mr. Lujan testified as
to his guilt at trial "in order to overcome the impact of
confessions illegally obtained and hence improperly
introduced" at trial.  *Harrison*, 392 U.S. at 223.  Where, as
here, such a causal link is shown, *Harrison* explains that the
inculpatory trial "testimony was tainted by the same illegality
that rendered the confessions themselves inadmissible." *Id.*
Under the *Harrison* exclusionary rule, the defendant's
inculpatory trial testimony, therefore, cannot be considered as
evidence of the defendant's guilt to support a conviction.

*Harrison* created a clear exclusionary rule that, when
applicable, precludes the use of a defendant's inculpatory trial
testimony to incriminate him in later proceedings.  The
Supreme Court laid out the framework for deciding whether
its exclusionary rule applies as follows:

The question is not whether the petitioner
made a knowing decision to testify [at trial],
but why.  If he did so in order to overcome the

> impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible.

*Id.*

Respondent focuses on the dissenting opinions in *Harrison* to argue that this rule does not apply to the States. For example, Respondent points to Justice White's dissenting opinion, which states that the *Harrison* majority did not hold that a defendant's decision to testify in response to the admission of an illegally obtained confession compels him to be a witness against himself in violation of the Fifth Amendment. *Id.* at 229 (White, J., dissenting). This argument misses the point of the *Harrison* majority opinion. The majority opinion outlines a "fruit of the illegally procured confessions" exception to the "general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." *Id.* at 221–22. The Fifth Amendment's privilege against compulsory self-incrimination is not waived when a defendant's testimony is impelled by the need to counter his own out-of-court confession that was illegally obtained by law enforcement and improperly admitted by the government in its case-in-chief. *Id.* at 221–24.

As set forth in *Harrison*, a criminal defendant's Fifth Amendment constitutional protection against compulsory self-incrimination is violated by the use of that defendant's inadmissible confession in the prosecutor's case-in-chief. *Id*. at 222–23 & n.9. When such a constitutional violation occurs, *Harrison* requires that both the confession and, if

induced by the unlawfully admitted confession, any inculpatory trial testimony be excluded from later proceedings.[4] *Id.* at 222–24. The Supreme Court structured its rule in this way so as to fully eradicate the Fifth Amendment violation from later proceedings.

The Supreme Court reasoned that any testimonial admission of guilt induced by such a Fifth Amendment violation at trial must be excluded because to hold otherwise would take away the essence of the privilege against compulsory self-incrimination. Borrowing from its Fourth Amendment case of *Silverthorne*, the *Harrison* court found the following principle to fit within its Fifth Amendment exclusionary rule framework:

> [T]he 'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.'

*Id.* at 222 (quoting *Silverthorne*, 251 U.S. at 392). The Court further relied on a truncated portion of the following language from *People v. Spencer*, 66 Cal. 2d 158 (1967), as support for the *Harrison* exclusionary rule:

---

[4] In *Harrison*, the burden rested with the government to show that its illegal action did not induce the trial testimony at issue. 392 U.S. at 225. Here, however, this burden and who properly bears it on federal habeas review is not at issue. Petitioner provides evidence that he did not wish to testify at trial in the event his out-of-court confession was suppressed. Respondent does not provide any evidence to dispute this. Thus, we presume that the unlawful admission of Petitioner's out-of-court confession impelled his trial testimony.

> If the improper use of defendant's extrajudicial confession impelled his testimonial admission of guilt, we could hardly sustain his conviction on the theory that his confession to the police, although inadmissible, merely duplicated his subsequent confession to the jury; in that event we could not, in order to shield the resulting conviction from reversal, separate what he told the jury on the witness stand from what he confessed to the police during interrogation.

*See Spencer*, 66 Cal. 2d at 164 (holding defendant's trial testimony could not be considered on harmless error review absent a sufficient showing that the defendant did not take the stand as a result of the government's use of an improper confession in court); *Harrison*, 392 U.S. at 223–24.

In sum, *Harrison* focuses on how to cure a specific Fifth Amendment violation – the unlawful admission of a criminal defendant's confession. The exclusionary rule outlined in *Harrison* had nothing to do with the underlying reasons why the unlawfully admitted confessions were inadmissible. What mattered was that they were inadmissible. This is evident from the Supreme Court's discussion of the privilege against compulsory self-incrimination as the principle that prohibits the government's use of a "wrongfully obtained" confession against a defendant during the government's case-in-chief. *See Harrison*, 392 U.S. at 222. The Supreme Court held that this "same principle . . . prohibits the use of any testimony impelled" by the use of the wrongfully procured confession at trial. *Id.* As set forth above, *Harrison* outlines a clear exclusionary rule that applies to the States.

### C. *Harrison* Does Not Conflict with *Motes v. United States*, 178 U.S. 458 (1900)

Respondent argues that *Harrison* does not set forth a clearly established rule because it conflicts with *Motes v. United States*, 178 U.S. 458 (1900).[5]

In *Motes*, the Supreme Court held that the trial court erred in admitting the preliminary hearing testimony of a witness (a former co-defendant) who had provided incriminating evidence against the other defendants in a multi-defendant trial involving a conspiracy to commit murder. *Motes*, 178 U.S. at 467. The defendants had the opportunity to cross-examine the witness at the preliminary hearing. *Id.* at 470–71. Nevertheless, because the witness' "absence . . . was plainly to be attributed to the negligence of the prosecution," *id.* at 474, the trial court's admission of the witness' prior testimony violated the defendants' Sixth Amendment right to be confronted with witnesses against them. *Id.* at 471–74.

As a result of the trial court's error, the Supreme Court reversed the convictions of all the defendants, except one who had testified at trial. With respect to that defendant, the Supreme Court found the error to be harmless because the defendant's trial testimony alone was enough to support the conviction. *Id.* at 475–76. For this reason, the Court upheld that defendant's conviction, opining that reversal "would be trifling with the administration of the criminal law." *Id*. at 476.

---

[5] Respondent did not present this argument to the California Court of Appeal or the district court.

Respondent argues that *Motes* is in conflict with *Harrison* because it recognizes that the fairness and accuracy of a criminal trial is not compromised by an unconstitutional admission of evidence when a defendant voluntarily testifies to facts that fully support the jury's verdict in the case. The *Motes* decision, however, is clearly limited to the Sixth Amendment issue then before the Supreme Court. *See id*. at 474 ("We are unwilling to hold it [(the admission of this witness' testimony)] to be consistent with the constitutional requirement that an accused shall be confronted with witnesses against him . . . . We need not decide more in the present case.").

Further, the *Harrison* decision does not conflict with the holding in *Motes*. Indeed, the Supreme Court in *Harrison* explicitly declined to extend its decision to situations like that faced by the testifying defendant in *Motes*:

> We have no occasion in this case to canvass the complex and varied problems that arise when the trial testimony of a witness other than the accused is challenged as 'the evidentiary product of the poisoned tree.' . . . . we decide here only a case in which the prosecution illegally introduced the defendant's confession in evidence against him at trial in its case-in-chief.

*Harrison*, 392 U.S. at 223 n.9 (internal citations omitted). *Motes* does not obscure the clear law established by *Harrison*.

### D. *Harrison* Remains Clearly Established Law Subsequent to *Oregon v. Elstad*, 470 U.S. 298 (1985)

#### 1. *Elstad*

In December 1981, $150,000 worth of art and furnishings were stolen from an Oregon home. *Elstad*, 470 U.S. at 300. A witness implicated an eighteen-year-old neighbor of the victims, Michael Elstad. *Id.* Responding to the neighbor's tip, two officers went to Elstad's home with a warrant for his arrest. *Id.* While Officer McAllister spoke with Elstad's mother in another room, Officer Burke asked Elstad if he knew why the officers were there. *Id.* at 301. Elstad said he did not. The officer then asked Elstad if he knew a person by the name of Gross. *Id.* Elstad said he did, and also that, "he heard that there was a robbery at the Gross house." *Id.* Officer Burke told Elstad he "felt he was involved in that[.]" Elstad looked at the officer and said, "Yes, I was there." *Id.*

Elstad was transported to the Sheriff's headquarters. One hour later, Officer McAllister advised him of his *Miranda* rights, reading from a standard card. *Id.* Elstad stated he understood his rights, and, with them in mind, wished to speak with the officers. *Id.* Elstad gave a full confession. *Id.* The statement was typed, reviewed by Elstad, read back to him for correction, and initialed and signed by Elstad and both officers. *Id.*

At trial for first-degree burglary, Elstad's counsel moved to suppress his oral statement and signed confession, arguing that the statement at his house "let the cat out of the bag," citing *United States v. Bayer*, 331 U.S. 532 (1947), and tainted the subsequent confession as "fruit of the poisonous

tree," citing *Wong Sun v. United States*, 371 U.S. 471 (1963). *Id.* at 302.

The trial judge excluded Elstad's in-home statement because he had not been advised of his *Miranda* rights, but allowed the written confession. *Id.* The court concluded Elstad's statement was "given freely, voluntarily and knowingly" after he had waived his properly administered rights. "[The written statement] was not tainted in any way by the previous brief statement between [Elstad] and the [officers] that had arrested him." *Id.* Elstad was found guilty and received a five year sentence. *Id.*

Elstad appealed to the Oregon Court of Appeals. The Court of Appeals reversed his conviction, concluding that the crucial constitutional inquiry was "whether there was a sufficient break in the stream of events between [the] inadmissible statement and the written confession to insulate the latter statement from the effect of what went before." *State v. Elstad*, 658 P.2d 552, 554 (Or. Ct. App. 1983), *rev'd*, 470 U.S. 298 (1985). The Court of Appeals concluded that "the coercive impact of the unconstitutionally obtained statement remains, because in a defendant's mind it has sealed his fate. It is this impact that must be dissipated in order to make a subsequent confession admissible." *Id.* The Court of Appeals identified lapse of time and change of place from the original surroundings as the two most important considerations as to whether the impact had been sufficiently dissipated, and concluded that in Elstad's case, exclusion of the subsequent written confession was required. *Id.* at 554–55.

The Oregon Supreme Court declined review and the United States Supreme Court granted certiorari to consider

whether "the Self-Incrimination Clause of the Fifth Amendment requires the suppression of a confession, made after proper *Miranda* warnings and a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the defendant." *Elstad*, 470 U.S. at 303. Ultimately, the United States Supreme Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.* at 318.

### 2. *Elstad* Does Not Undermine *Harrison*

Respondent argues that *Harrison* does not set forth a clearly established rule because its entire rationale and reasoning has been undermined by the subsequent Supreme Court authority of *Elstad*. However, the Supreme Court in *Elstad* confronted and rejected this argument. The Supreme Court explained that it "has never embraced the theory" pursued by the defendant in *Elstad* – "that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." *Id*. at 316–17. The Court then distinguished *Harrison* as precedent wherein the government's illegal actions – as opposed to the defendant's ignorance – vitiated the voluntariness of a confession:

> If the prosecution has actually violated the defendant's Fifth Amendment rights by introducing an inadmissible confession at trial, compelling the defendant to testify in rebuttal, the rule announced in *Harrison v. United States*[,] 392 U.S. 219[](1968), precludes use of that testimony on retrial.

*Id.*   Thus, in distinguishing *Elstad* from *Harrison*, the Supreme Court confirmed the *Harrison* exclusionary rule as good constitutional law.

*Elstad* and *Harrison* are also distinguishable on their facts.  In *Elstad*, the Supreme Court addressed the scope of the *Miranda* exclusionary rule in the context of multiple confessions obtained from a suspect during a criminal investigation.  In *Harrison*, the Supreme Court outlined an exclusionary rule to apply in the context of unlawfully admitted confessions of the defendant in a criminal trial. Accordingly, *Elstad* concerns the investigative stage of a criminal proceeding whereas *Harrison* concerns the trial stage.  Both cases developed rules that safeguard the Fifth Amendment's prohibition of the use by the prosecution in its case-in-chief of compelled testimony.

The opinions of *Elstad* and *Harrison* should not be conflated to create ambiguity where there is none.  *Harrison* sets forth a clearly established rule that has not been undermined by *Elstad*.

Under the *Harrison* exclusionary rule, when a criminal defendant's trial testimony is induced by the erroneous admission of his out-of-court confession into evidence as part of the government's case-in-chief, that trial testimony cannot be introduced in a subsequent prosecution, nor can it be used to support the initial conviction on harmless error review, because to do so would perpetuate the underlying constitutional error.  In the case at bar, the California Court of Appeal's harmless error analysis violated this rule and,

thus, was contrary to clearly established federal law.**[6]**
Therefore, we affirm the district court's determination that
federal habeas relief under 28 U.S.C. § 2254(d)(1) is
warranted.

## II. Petitioner's Rights Under *Miranda* Were Violated

Respondent argues that the discussion that Mr. Lujan had
with the police regarding his right to counsel satisfied
*Miranda*. "*Miranda* claims present mixed questions of law
and fact which we review de novo." *Sechrest v. Ignacio*,
549 F.3d 789, 805 (9th Cir. 2008). Thus, we apply a de novo
standard in reviewing whether the district court and
California Court of Appeal properly concluded that
Petitioner's rights under *Miranda* were violated.

In *Miranda*, the Supreme Court held that, because of the
inherently coercive nature of custodial interrogation, a person
must be advised of his or her constitutional rights, including
being advised prior to any questioning of the right to an
attorney and the right to remain silent. *See Miranda*,
384 U.S. at 444. "If the individual states that he wants an
attorney, the interrogation must cease until an attorney is
present." *Id.* at 474. In such an instance, "[i]f the
interrogation continues without the presence of an attorney
and a statement is taken, a heavy burden rests on the
government to demonstrate that the defendant knowingly and

---

**[6]** Again, the parties do not dispute that, if *Harrison* is clear federal law
applicable to the States (which we so conclude), then the California Court
of Appeal's decision affirming the conviction was contrary to or an
unreasonable application of clearly established federal law as set forth in
*Harrison*.

intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475.

Respondent argues that both the California Court of Appeal and the district court mistakenly held law enforcement to a standard higher than is required under Supreme Court precedent by requiring an affirmative warning that specifically states that the suspect has the right to counsel before and during questioning.[7] Respondent reads the interrogation transcripts as communicating to Petitioner that it was his "choice" and "prerogative" whether to speak with or without an attorney present. Thus, according to Respondent, *Miranda* was satisfied since "[d]ifferent words" from those set forth in *Miranda* may be used by law enforcement so long as they "communicate[] the same essential message." *See Florida v. Powell*, 559 U.S. 50, 64 (2010).

The problem here is that the words used by law enforcement did not reasonably convey to Petitioner that he had the right to speak with an attorney present at all times – before and during his custodial interrogations. In the end, we find that the "choice" communicated to Petitioner was that he could speak without an attorney or he could remain silent throughout his interrogations. Speaking with an attorney present was not an option presented to Petitioner. Thus, *Miranda* was never satisfied.

Before his first interrogation, Petitioner was told the following regarding his *Miranda* rights:

---

[7] Petitioner mistakenly asserts that Respondent did not challenge the Court of Appeal's *Miranda* ruling in the district court.

> Your rights are you have the right to remain
> silent, whatever we talk about or you say can
> be used in a court of law against you, and if
> you don't have money to hire an attorney
> one's appointed to represent you free of
> charge. So, those are your rights. If you have
> questions about the case, if you want to tell us
> about what happened tonight, we'll take your
> statement, take your statement from beginning
> to end. We'll give you an opportunity to
> explain your side of the story. That's what
> we're looking for and we're looking for the
> truth. So you understand all that?

Petitioner did not receive any further advisements about his
right to counsel until his third interrogation.

Respondent argues that, during Petitioner's third
interrogation, Detective Rodriguez provided an "enhanced
*Miranda* warning" that advised Petitioner above what the
*Miranda* warning itself provides by telling Petitioner that his
legal counsel would likely advise against making any
statements to the police. The detective advised Petitioner, "I
doubt that if you hire an attorney they'll let you make a
statement, usually they don't. That's the way it goes. So,
that's your prerogative, that's your choice." This advice did
not inform Mr. Lujan of his constitutional right to counsel.
It was improper, unauthorized legal advice. *See Collazo v.
Estelle*, 940 F.2d 411, 414, 418 (9th Cir. 1991) (holding
officer's advice, which included, "a lawyer, he's gonna say
forget it. You know, don't talk to the police," "demeaned the
pre-trial role of counsel articulated by the Supreme Court in
*Miranda* and its progeny. He did so by dispensing a one-
sided, unauthorized legal opinion regarding whether [the

suspect] should remain silent and exercise his right to counsel. This advice adds yet another unacceptable dimension to [the officer's] methods.").

Further, read in context, this advice was given to counter Petitioner's invocation of his right to counsel. The purportedly enhanced *Miranda* warning came after confronting Petitioner with letters written to Monica about their marital problems, photographs of Monica and their children, and purported blood evidence found at Petitioner's house, and after the following dialogue took place:

> Sgt. Rodriguez: . . . . Everything comes back to you. Everything says it's you. People say it's you. The only person that's still somewhat in denial is you. . . . maybe you're going to need to look inside yourself. Like I told you before, it's very important that if there's some other side to this story, your side of the story that we hear, it's very important. . . . there may be some other movements, other mechanisms, other things that cause other causal factors, other things that are involved that we don't know. Only you know and only you can tell us. Only you can tell us, what you were feeling at the time. Only you can tell us how you really felt, if you felt provoked. If there was something that was done that, took you over the edge. All those kinds of issues –
>
> Defendant: Can I have an attorney present?
>
> Sgt. Rodriguez: You want, you want an attorney present? You feel you need one?

Defendant: Yes I do.

The interrogation should have ended there as Petitioner invoked his right to counsel.

Instead, the detective pushed forward as if Petitioner's unequivocal invocation of the right to counsel was somehow unclear, making statements like, "So like I said it's up to you. So want [*sic*] to make a statement without an attorney, that's up to you. I doubt that if you hire an attorney they'll let you make a statement," and "Now, you've asked for an attorney, so if you want to talk about this, you'll have to tell me without an attorney present." Given a commonsense reading, the record shows that law enforcement's advisements overall limited Petitioner's right to counsel and did not directly or indirectly fully communicate to Petitioner his right to counsel at all times.

Respondent contends that any argument that the detective's "enhanced *Miranda* warning" did not clearly convey to Petitioner his right to have counsel present during any questioning runs afoul of *Powell*. Respondent argues that the California Court of Appeal and the district court interpreted the words of Detective Rodriguez in such a way so as to come to the counterintuitive conclusion that counsel would be whisked in and out of the interrogation between questions. We disagree that the advisements at issue here lead to such a conclusion.

In *Powell*, the following advisement was given:

> You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You

have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview.

*Powell*, 559 U.S. at 54. The Supreme Court concluded that the "warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 62. The same cannot be said of the warnings provided to Petitioner.

Accordingly, we affirm the district court's and state appellate court's conclusion that law enforcement's communications with Petitioner did not comply with the clearly established Supreme Court precedent of *Miranda* and its progeny. Petitioner was never advised of his right to counsel at all times.

## III.    The District Court's Remedy

Petitioner argues that the district court erred in granting the state the option to modify Petitioner's convictions to second-degree murder in lieu of releasing or retrying him. Petitioner argues that only the habeas remedies of release or retrial are appropriate in this case, as a trial judge may also

instruct the jury on voluntary manslaughter in a retrial.**[8]**  For
reasons other than those argued by Petitioner, we remand.

We review the district court's remedy for abuse of
discretion. *Chioino*, 581 F.3d at 1184.  In general, "a district
court abuses its discretion when it makes an error of law,
when it rests its decision on clearly erroneous findings of fact,
or when we are left with a definite and firm conviction that
the district court committed a clear error of judgment."
*United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012)
(en banc) (internal quotations and alteration omitted).

In habeas cases, federal courts have broad discretion in
conditioning a judgment granting relief. *Hilton v. Braunskill*,
481 U.S. 770, 775 (1987).  "Federal courts are authorized,
under 28 U.S.C. § 2243, to dispose of habeas corpus matters
as law and justice require."  *Id.* (internal quotations omitted).
More specifically, a court may issue a conditional writ that
requires the state to release a petitioner unless it takes some
other remedial action, such as retrial of the petitioner.
*Herrera v. Collins*, 506 U.S. 390, 403 (1993); *Braunskill*,
481 U.S. at 775 ("[F]ederal courts may delay the release of a
successful habeas petitioner in order to provide the State an
opportunity to correct the constitutional violation found by
the court.").

---

**[8]** In California, voluntary manslaughter is the unlawful killing of a
human being, without malice, upon a sudden quarrel or heat of passion.
Cal. Penal Code § 192(a).  The provocation – never simply the passion for
revenge – must suffice to cause an ordinary man of average disposition "to
act rashly or without due deliberation and reflection, and from this passion
rather than from judgment."  *People v. Berry*, 18 Cal. 3d 509, 515 (1976).

The United States Supreme Court recently provided guidance on crafting a habeas remedy.  In a case concerning a Sixth Amendment violation, the Court stated:

> [R]emedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'  Thus, a remedy must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution.

*Lafler v. Cooper*, 132 S. Ct. 1376, 1388–89 (2012) (quoting *United States v. Morrison*, 449 U.S. 361, 364–65 (1981)). We find it sensible that the Court's guidance apply equally to a Fifth Amendment remedy, as well.

Here, the district court fashioned its remedy in reliance on *Harvest v. Castro*, 531 F.3d 737 (9th Cir. 2008), which it believed supported the proposition that it could direct the state to modify Petitioner's convictions to second-degree murder if the state chose not to release or retry him.  *See id*. at 740.    *Harvest* was a rehearing of an unreported memorandum disposition.  The panel in *Harvest* referenced without comment the previous panel's remand order that directed "'the district court to order the state to release the petitioner unless the state either modifies the conviction to one for second degree murder or retries the petitioner.'"  *Id.* (quoting *Harvest v. Castro*, 121 F. App'x 216, 220 (9th Cir. 2005) (unpublished opinion)).  Since the district court issued its opinion relying on *Harvest*, however, we decided *Douglas*

*v. Jacquez*, 626 F.3d 501 (9th Cir. 2010), which provides guidance.

*Douglas* involved a habeas petitioner who had been convicted of arson of an inhabited structure under California Penal Code Section 451(b). The district court, on habeas review, found insufficient evidence of inhabitation and ordered the state to resentence the petitioner under California Penal Code Section 451(c), for arson of a structure. *Id.* at 503. This Court vacated the order and remanded, holding that "[t]he district court's power under habeas corpus was either immediately to vacate the prisoner's arson sentence, or to postpone such relief for a reasonable period to allow the state court properly to sentence the prisoner." *Id.* at 504. "Under California law, a trial court can modify a jury verdict when the trial evidence establishes that the defendant is not guilty of the charged crime, but is guilty of a lesser included offense." *Id.* at 505 (citing Cal. Penal Code § 1181(6)).[9] This Court held that:

---

[9] The California Penal Code provides:

> When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed.

Cal. Penal Code § 1181(6). California courts may also modify a conviction to a lesser included offense in habeas proceedings. *See In re Bower*, 700 P.2d 1269 (Cal. 1985).

> [A] *California state trial court* can modify the judgment from a conviction under § 451(b) to a [lesser] conviction under § 451(c). . . . Instead of directing the trial court to enter a judgment under § 451(c), the district court should have granted a conditional writ of habeas corpus and ordered that [petitioner's] conviction under § 451(b) be vacated only if the state court did not resentence him within a reasonable time, such as 90 days. The state court would thus have an opportunity to correct its own constitutional error.

*Id.* (emphasis added).

We now apply *Douglas*'s holding to this case. The district court determined that absent the improperly admitted confession and testimony, the record supported a modification of the convictions to second-degree murder convictions and such a modification would be an appropriate habeas remedy. We conclude that the district court correctly concluded that it may provide the state trial court with the general option of remedying the constitutional error through a modification of the petitioner's convictions. *Id.*; *see also Lafler*, 132 S. Ct. at 1388–91. However, the district court erred in specifically concluding that second-degree murder convictions are an appropriate remedy here. The state court made no such determination, and thus, that issue is not properly before us on habeas review. Applying *Douglas*, we leave to the state court the question of whether based on this record a modification of the convictions to second-degree murder is proper as a matter of law.

Accordingly, we vacate the portions of the district court's order and judgment that conclude second-degree murder convictions are an appropriate remedy. We remand this habeas petition to the district court to modify its judgment and issue a conditional writ in accordance with this opinion. On remand, the district court's judgment and writ may include the option that the state court make an independent determination as to whether the convictions can be modified under state law.

## IV.    Voluntariness of Petitioner's Confession

Petitioner now asks us to decide, or remand to the district court to decide, whether his confession was involuntary in addition to having been procured in violation of *Miranda*. The district court declined to decide this issue, as the magistrate judge determined it need not address alternative grounds for the habeas relief already granted. We agree with the district court's reasoning. Having provided Petitioner with federal habeas relief pursuant to 28 § U.S.C. 2254(d) that removes the taint of the improperly admitted confession and the testimony thereby impelled, an inquiry into the voluntariness of Petitioner's confession is neither appropriate nor necessary at this point. *See Blazak v. Ricketts*, 971 F.2d 1408, 1413–14 (9th Cir. 1992) (holding that courts may avoid resolution of all extraneous issues to preserve scarce judicial resources); *see also Missouri v. Seibert*, 542 U.S. 600, 617 n.8 (2004) ("Because we find that the [*Miranda*] warnings were inadequate, there is no need to assess the actual voluntariness of the statement.").

Further, the purpose of habeas remedies is to "'put the defendant back in the position he would have been in if the [constitutional] violation never occurred.'" *Nunes v. Mueller*,

350 F.3d 1045, 1057 (9th Cir. 2003) (quoting *United States v. Blaylock*, 20 F.3d 1458, 1468 (9th Cir. 1994)); *see also Johnson v. Uribe*, 682 F.3d 1238, 1244, *opinion amended and superceded on denial of reh'g*, 700 F.3d 413 (9th Cir. 2012); *Chioino*, 581 F.3d at 1184. Here, the remedy afforded to Petitioner does just that – his improperly considered confessions have been stripped from the record and cannot be used in the government's case-in-chief should Petitioner be retried, nor can they be used as inculpatory evidence should proceedings be initiated to modify his convictions in state court. Nevertheless, Petitioner asks this Court to address the issue of voluntariness because while "statements taken in violation of only the prophylactic *Miranda* rules may not be used in the prosecution's case in chief, they are admissible to impeach conflicting testimony by the defendant." *Harvey*, 494 U.S. at 350. On the other hand, involuntary statements may not come in at all. *Mincey v. Arizona*, 437 U.S. 385, 398 (1978).

Petitioner's request is inconsistent with the record. Here, Petitioner's trial counsel declared under penalty of perjury that Petitioner would not have testified absent the improper admission of his custodial confession. As such, ruling now on whether Petitioner's custodial confession was involuntary would not further the purpose of putting Petitioner back in the position of a non-testifying criminal defendant – the position he would have been in if the constitutional violation never occurred. Rather, it would serve only to provide Petitioner a potential advantage in the unlikely event this case is retried.

Accordingly, because the voluntariness issue is extraneous to Petitioner's request for federal habeas relief, we decline to address it.

**CONCLUSION**

We affirm the district court's judgment insofar as it grants Mr. Lujan's Second Amended Petition pursuant to 28 U.S.C. § 2254, but vacate the judgment and conditional writ of habeas corpus and remand with instructions to reissue the judgment and writ consistent with this opinion.

Respondent Silvia Garcia shall bear costs in these cross-appeals.

**AFFIRMED in part, VACATED and REMANDED in part.**